# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **NATURAL GAS PIPELINE COMPANY OF AMERICA LLC,** | § § § § |
| *Plaintiff,* | § |
| **vs.** | § **Case Number: 4:20-cv-00003** |
| | § |
| **TRACT NO. TX-WA-009.050, 1.22 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.29 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.34 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.46 ACRES OF LAND, MORE OR LESS, PERMANENT ACCESS ROAD, IN WARD COUNTY, TEXAS, Angie M. Lasater; James D. Lasater; Barbara Lasater, as Trustee of Trust B created U/W/O Alice Grace; Linda Lee Lasater;** | § **Judge:** § § § § § § § § § § § § § § § § |
| **and** | § § |
| **TRACT NO. TX-WA-011.000, 2.52 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.44 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.71 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, IN WARD COUNTY, TEXAS, Angie M. Lasater; James D. Lasater; Barbara Lasater, as Trustee of Trust B created** | § § § § § § § § § § § § § |

U/W/O Alice Grace; Linda Lee
Lasater;

and

TRACT NO. TX-WA-015.000,
2.26 ACRES OF LAND, MORE OR
LESS, PERMANENT EASEMENT
(PIPELINE RIGHT-OF-WAY), 2.34
ACRES OF LAND, MORE OR LESS,
TEMPORARY WORK SPACE, 0.20
ACRES OF LAND, MORE OR LESS,
ADDITIONAL TEMPORARY
WORK SPACE, AND 2.36 ACRES
OF LAND, MORE OR LESS,
PERMANENT ACCESS ROAD, IN
WARD COUNTY, TEXAS, Angie M.
Lasater; James D. Lasater; Barbara
Lasater, as Trustee of Trust B created
U/W/O Alice Grace Lasater,
Deceased;

and

TRACT NO. WA-016.000,
1.23 ACRES OF LAND, MORE OR
LESS, PERMANENT EASEMENT
(PIPELINE RIGHT-OF-WAY), 1.14
ACRES OF LAND, MORE OR LESS,
TEMPORARY WORK SPACE, 0.10
ACRES OF LAND, MORE OR LESS,
ADDITIONAL TEMPORARY
WORK SPACE, AND 0.56 ACRES
OF LAND, MORE OR LESS,
PERMANENT ACCESS ROAD, IN
WARD COUNTY, TEXAS, Angie M.
Lasater; James D. Lasater; Barbara
Lasater, as Trustee of Trust B created
U/W/O Alice Grace; Linda Lee
Lasater;

and

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

2

TRACT NO. Access Roads 10 & 11                      §
(Sec. 101, Blk. 34),                                §
2.85 ACRES OF LAND, MORE OR                         §
LESS, PERMANENT ACCESS                              §
ROAD, IN WARD COUNTY,                               §
TEXAS, Charles Martel Bryant;                       §
Addison Crockett Bryant;                            §
                                                    §
and                                                 §
                                                    §
TRACT NO. TX-WA-005.050,                            §
0.3 ACRES OF LAND, MORE OR                          §
LESS, PERMANENT EASEMENT                            §
(PIPELINE RIGHT-OF-WAY), 0.45                       §
ACRES OF LAND, MORE OR LESS,                        §
TEMPORARY WORK SPACE, AND                           §
0.23 ACRES OF LAND, MORE OR                         §
LESS, ADDITIONAL TEMPORARY                          §
WORK SPACE, IN WARD                                 §
COUNTY, TEXAS, N.S. Hall and                        §
Bessie Juanita Hall, or the executor,               §
executrix and, or administrator of the              §
estates of N.S. Hall and Bessie Juanita             §
Hall, deceased, Any Heirs, Successors               §
and Assigns N.S. Hall and Bessie                    §
Juanita Hall, deceased, and Any                     §
Unknown Owners;                                     §
                                                    §
and                                                 §
                                                    §
TRACT NO. TX-RV-019.000,                            §
0.08 ACRES OF LAND, MORE OR                         §
LESS, PERMANENT EASEMENT                            §
(PIPELINE RIGHT-OF-WAY), 0.30                       §
ACRES OF LAND, MORE OR LESS,                        §
TEMPORARY WORK SPACE, AND                           §
0.1 0ACRES OF LAND, MORE OR                         §
LESS, ADDITIONAL TEMPORARY                          §
WORK SPACE, IN REEVES                               §
COUNTY, TEXAS, Olivia P. B.                         §
Crudgington, whether alive or                       §
deceased, and, if deceased, the                     §
executor, executrix and, or                         §

administrator of the Estate of Olivia P. B. Crudgington, deceased, and all heirs and, or devisees of Olivia P. B. Crudgington;  Frost National Bank, Trustee of The Olivia P.B. Crudgington Revocable Trust dated January 23, 1995; Keith B. Crudgington, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Keith B. Crudgington, deceased, and all heirs and, or devisees of Keith B. Crudgington; Richard T. Davis, Jr. , whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Richard T. Davis, Jr., deceased, and all heirs and, or devisees of Richard T. Davis, Jr.; Catherine McClure Nixon Cook, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Catherine McClure Nixon Cook, deceased, and all heirs and, or devisees of Catherine McClure Nixon Cook; William Campbell Nixon, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of William Campbell Nixon, deceased, and all heirs and, or devisees of William Campbell Nixon; Arthur Clement Russell, or the executor, executrix and, or administrator of the estate of Arthur Clement Russell, deceased, and all heirs and, or devisees of  Arthur Clement Russell, deceased; Robert Reid Russell, or the executor, executrix and, or administrator of the estate of Robert Reid Russell, deceased, and all heirs and, or devisees of  Robert Reid

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

4

Russell, deceased; Elizabeth Sophia C. §
Russell, or the executor, executrix §
and, or administrator of the estate of §
Elizabeth Sophia C. Russell, deceased, §
and all heirs and, or devisees of §
Elizabeth Sophia C. Russell, deceased; §
Madeline J. Russell, or the executor, §
executrix and, or administrator of the §
estate of Madeline J. Russell, §
deceased, and all heirs and, or §
devisees of  Madeline J. Russell, §
deceased; Any Heirs, Successors and §
Assigns of the Above-Named §
Defendants, and Any Unknown §
Owners, §

and §

TRACT NO. TX-RV-021.000; TX- §
RV-022.000; TX-RV-022.050, §
7.96 ACRES OF LAND, MORE OR §
LESS, PERMANENT EASEMENT §
(PIPELINE RIGHT-OF-WAY), 8.04 §
ACRES OF LAND, MORE OR LESS, §
TEMPORARY WORK SPACE, 1.89 §
ACRES OF LAND, MORE OR LESS, §
ADDITIONAL TEMPORARY §
WORK SPACE, AND 1.98 ACRES §
OF LAND, MORE OR LESS, §
PERMANENT ACCESS ROAD, IN §
REEVES COUNTY, TEXAS, Pecos §
River Land, LP; CAMATI Land §
Holdings LLC; Walking O Surface, §
LP; James Earl Cox and Susan Boyd §
Cox, as Trustees of the Cox Living §
Trust, dated the 13th day of August, §
2007; Paul H. Oden; §

and §

TRACT NO. Access Road 1 (SW/4 §
SW/4 Sec. 19, Blk. 7), §
0.61 ACRES OF LAND, MORE OR §

5

LESS, PERMANENT ACCESS                          §
ROAD, IN REEVES COUNTY,                          §
TEXAS, CAMATI Land Holdings                      §
LLC; James Earl Cox and Susan                    §
Boyd Cox, as Trustees of the Cox                 §
Living Trust, dated the 13th day of              §
August, 2007;                                    §

and                                              §
                                                 §
TRACT NO. Access Road 1 (Section                 §
20, Blk 7),                                      §
2.51 ACRES OF LAND, MORE OR                      §
LESS, PERMANENT ACCESS                          §
ROAD, IN REEVES COUNTY,                          §
TEXAS, Pecos River Land, LP;                     §
CAMATI Land Holdings LLC;                        §
Walking O Surface, LP; James Earl                §
Cox and Susan Boyd Cox, as Trustees              §
of the Cox Living Trust, dated the               §
13th day of August, 2007; Paul H.                §
Oden;                                            §
                                                 §
and                                              §
                                                 §
TRACT NO. TX-RV-025.000,                         §
3.73 ACRES OF LAND, MORE OR                      §
LESS, PERMANENT EASEMENT                        §
(PIPELINE RIGHT-OF-WAY), 3.66                    §
ACRES OF LAND, MORE OR LESS,                     §
TEMPORARY WORK SPACE, AND                       §
0.24 ACRES OF LAND, MORE OR                      §
LESS, ADDITIONAL TEMPORARY                       §
WORK SPACE, IN REEVES                            §
COUNTY, TEXAS, Desert Partners                   §
VI, LP;                                          §
                                                 §
and                                              §
                                                 §
TRACT NO. TX-RV-026.000,                         §
6.46 ACRES OF LAND, MORE OR                      §
LESS, PERMANENT EASEMENT                        §
(PIPELINE RIGHT-OF-WAY), 6.57                    §

ACRES OF LAND, MORE OR LESS, §
TEMPORARY WORK SPACE, 2.11 §
ACRES OF LAND, MORE OR LESS, §
ADDITIONAL TEMPORARY §
WORK SPACE, AND 2.08 ACRES §
OF LAND, MORE OR LESS, §
PERMANENT ACCESS ROAD, IN §
REEVES COUNTY, TEXAS, Joanne §
Karen Hoover, whether alive or §
deceased, and, if deceased, the §
executor, executrix and, or §
administrator of the Estate of Joanne §
Karen Hoover, deceased, and all heirs §
and, or devisees of Joanne Karen §
Hoover; Judith Ann Delmer, whether §
alive or deceased, and, if deceased, the §
executor, executrix and, or §
administrator of the Estate of Judith §
Ann Delmer, deceased, and all heirs §
and, or devisees of Judith Ann §
Delmer; Mary Louise Sciuto, whether §
alive or deceased, and, if deceased, the §
executor, executrix and, or §
administrator of the Estate of Mary §
Louise Sciuto, deceased, and all heirs §
and, or devisees of Mary Louise §
Sciuto; Kristen Spencer Barker, §
whether alive or deceased, and, if §
deceased, the executor, executrix and, §
or administrator of the Estate of §
Kristen Spencer Barker, deceased, §
and all heirs and, or devisees of §
Kristen Spencer Barker; Virginia C. §
O'Bryan, or the executor, executrix §
and, or administrator of the estate of §
Virginia C. O'Bryan, deceased, and all §
heirs and, or devisees of  Virginia C. §
O'Bryan; Martha B. Williamson, or §
the executor, executrix and, or §
administrator of the estate of Martha §
B. Williamson, deceased, and all heirs §
and, or devisees of  Martha B. §
Williamson; Any Heirs, Successors §

7

**and Assigns of the Above-Named Defendants, and Any Unknown Owners,**

**and**

**TRACT NO. Access Road 7 (Section 15, Block C3), 2.42 ACRES OF LAND, MORE OR LESS, PERMANENT ACCESS ROAD, IN REEVES COUNTY, TEXAS, Enstor Waha Storage & Transportation, L.P.,**

§
§
§
§
§
§
§
§
§
§
§
§
§

*Defendants.*

## VERIFIED COMPLAINT FOR CONDEMNATION

Plaintiff, NATURAL GAS PIPELINE COMPANY OF AMERICA LLC ("Plaintiff" or "NGPL"), by and through counsel, files this Verified Complaint for Condemnation ("Verified Complaint") pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1.  NGPL seeks an order of condemnation for the permanent pipeline, temporary work space, permanent and temporary road access and other rights-of-way and easements (the "Easements"), which are described below and identified, described and depicted on **Exhibit A,** attached hereto and incorporated herein, and for such other legal and equitable relief as may be appropriate, specifically including injunctive relief allowing NGPL to immediately enter the property to clear the Easements, commence and complete construction and restoration efforts, and operate and maintain the pipeline described in paragraph 1 below, while the proper amount of compensation for the taking is resolved in this action.

### Jurisdiction, Venue, and Authority for Taking

1.      NGPL is the holder of a Certificate of Public Convenience and Necessity ("Certificate") issued on October 17, 2019, by the Federal Energy Regulatory Commission ("FERC"), under Docket No. CP19-52-000, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein, to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place approximately 16.84 miles of new 30-inch-diameter natural gas pipeline in Ward, Reeves, and Pecos Counties, Texas, to provide firm transportation capacity and new pipeline infrastructure to transport natural gas production in the Permian Basin area to a new bi-directional interconnection with Trans-Pecos Pipeline, LLC at the Trans-Pecos Pipeline's Waha Hub (TPP Waha Hub) in Pecos County, Texas (the Lockridge Extension Pipeline Project, hereinafter, the "NGPL Project" or "Project"). The NGPL Project will provide up to 500,000 Dth/d of new firm transportation capacity from a primary receipt point at the existing Lucid Rojo Toro interconnection and NGPL's system in Lea County, New Mexico, to a primary delivery point at the TPP Waha Hub, and represents an approximate $51.6 million capital investment of private funds for public infrastructure under the NGA.

2.      This is a civil action for the taking of property interests under the power of eminent domain and for the determination and award of just compensation to the Surface Owners and Other Parties-in-Interest as identified on **Exhibit A**. The authority for the taking is 15 U.S.C. § 717f(h), which grants federal jurisdiction. Additionally, jurisdiction exists under 28 U.S.C. §1331, because this action arises under the laws of the United States,

and under 28 U.S.C. § 1337, because this action arises under an Act of Congress regulating interstate commerce.

3.      Pursuant to 15 U.S.C. § 717f(h), the compensation demanded or claimed by the owner or owners of each tract to be burdened by the Easements on, over, across and, or under each such tract exceeds $3,000.00, as does the amount offered by NGPL for such Easements.

4.      NGPL has not been able to acquire by contract, and/or is unable to agree as to the amount of compensation to be paid for the Easements that will burden the lands owned by the Defendants (as hereinafter defined).

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the properties that are the subject of this action are situated within this judicial district, and it is proper to join all of the properties identified on **Exhibit A** in this action and to join all of the Defendants.

**Parties**

6.      NGPL is a natural gas company as defined by Section 2(a) of the Natural Gas Act, 15 U.S.C. § 717(a)(6). NGPL is a Delaware limited liability company with a principal place of business at 500 Dallas Street, Suite 1000, Houston, Texas, 77002.  It is registered to do business in, and is engaged in business in the State of Texas and within this federal district.

7.      NGPL is a company organized for the purpose, among other things, of transporting natural gas in interstate commerce through pipes and conduits, and is an interstate natural gas company within the meaning of the Natural Gas Act, 15 U.S.C. §§

717a(6) and (1), and as such, is qualified to construct, install, own, operate and maintain pipelines for the transmission of natural gas in interstate commerce.

8.      Pursuant to the Certificate, the FERC has determined that public convenience and necessity requires approve of the NGPL Project based upon the benefits of the Project and the lack of, or minimal adverse impacts on, existing shippers, other pipelines, and their captive customers, and landowners and surrounding communities. The Easements sought herein are needed by NGPL to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place, the NGPL Project for the transportation of natural gas in interstate commerce, and to fulfill the public purposes for which the Certificate was issued.  **Exhibit B**, Certificate at ¶ ¶ 10–15. A copy of NGPL's letter to FERC in which NGPL accepted the terms of the Certificate is attached as **Exhibit C**.

9.      The persons and, or entities known, or whose names could be ascertained by a reasonably diligent search of the records as owning or claiming any interest in the tract or tracts on, over, across and, or under which the Easements are to be situated as identified, depicted, or described on **Exhibit A** (the "Parent Tracts"), are collectively referred to herein as "Defendants."

10.     There may be others who have or may claim some interest in the Parent Tracts, whose names could not be ascertained by a reasonably diligent search of the records. These persons and/or entities are made parties to this action under the designation of "Unknown Owners" pursuant to Federal Rule of Civil Procedure 71.1(c)(3).

11.     The amount of the property sought for such Easements, as well as the location of all Easements sought to be condemned in this action are within the scope of the Certificate and are necessary for the operation of the NGPL Project. A map depicting the NGPL Project's overall approved route is attached hereto as **Exhibit D.**

12.     NGPL has voluntarily acquired the majority of the Easements necessary for the NGPL Project, and has negotiated with the Surface Owners in an attempt to amicably purchase the Easements on, over, across and under the Parent Tracts, and has negotiated with Other Parties-in-Interest to accommodate pre-existing rights within the lands to be traversed by the Easements and, or existing facilities crossed by the Easements, all as necessary to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place the NGPL Project, but has not been able to reach an agreement in this regard.  Furthermore, NGPL has made written offers to the affected Surface Owners for the Easements sought to be acquired before instituting this action, but such offers have been rejected, or such affected Surface Owners have failed to respond, thereby preventing negotiations.

13.     Therefore, it is necessary for NGPL to exercise its right of eminent domain under Section 717f(h) of the Natural Gas Act, 15 U.S.C. §717f(h), to acquire the needed Easements for the NGPL Project.

### The NGPL Project

14.     The NGPL Project will provide up to 500,000 Dth/d of new firm transportation capacity to meet the demands of gas producers and, or shippers.

15.     The NGPL Project represents an approximate $51.6 million investment in

energy infrastructure in the United States. ⌞1⌟SEP

16.     Pursuant to the Certificate, NGPL must complete the authorized construction of the proposed facilities and make them available for service by the In-Service Date specified in the Certificate, and much sooner to meet the needs and requirements of its shippers.

17.     NGPL has entered into binding Precedent Service Agreements with a shipper for long-term firm transportation service for 100 percent (100%) of the 500,000 Dth/d of the NGPL Project's design capacity. In order to satisfy the requirements of the precedent agreements, NGPL must expeditiously commence construction of the Project so that the lines can be timely placed in service to meet the needs and requirements of shippers and the shippers' receiving customers.

18.     The proposed construction schedule and In-Service Dates for the NGPL Project are driven by the public need for providing a means of transporting large volumes of natural gas to market.

19.     The NGPL Project is a complex project that involves numerous stakeholders, including gas producers and shippers, landowners, environmental and public interest groups, consumers, as well as numerous governmental agencies, including FERC, the U.S. Environmental Protection Agency (EPA), the U.S. Army Corps of Engineers (COE), the U.S. Fish and Wildlife Service (USFWS), Texas Commission on Environmental Quality (TCEQ), and the Texas Railroad Commission.

20.     Per the Certificate, the construction of the NGPL Project must comply with applicable environmental permits, approvals and regulations.  *See* **Exhibit B**, Certificate at

Appendix A – Environmental Conditions.  As part of the Certificate issuance process, a Final  Environmental Assessment was issued by FERC, which assessed the potential environmental effects of the construction and operation of the NGPL Project. The Final Environmental Assessment concluded that the NGPL Project, when constructed and operated in accordance with applicable laws and regulations, and the mitigating measures discussed in the Environmental Assessment and FERC's recommendations therein, would not significantly affect the quality of the human environment.  *See* Notice of Availability of the Final Environmental Assessment of the Proposed Lockridge Extension Pipeline Project Natural Gas Pipeline Company of America 84 Fed. Reg. 26,672 (June 7, 2019) and Lockridge Extension Pipeline Project Environmental Assessment, at 60, attached hereto as **Exhibit E** and incorporated herein.

21.    The construction schedule for the NGPL Project is constricted and involves a complex logistical effort that will require the careful coordination of multiple crews of construction workers, performing various stages of work sequentially in an assembly-like fashion along the construction corridor of approximately 16 miles, at a rate (distance per day) that is affected by topography, road, water bodies and other factors.

22.    To meet all of its shippers' needs and those of its shippers' customers, while at the same time complying with applicable regulations and NGPL's obligations as set forth in the Certificate, NGPL must begin construction immediately.

23.    Timing is of the essence, and maintaining the project schedule is critical, as any delay in commencing and completing construction of the NGPL Project will likely prevent NGPL from meeting the needs and requirements of its shippers and its shippers'

receiving customers, while at the same time complying with its FERC obligations under the Certificate.

### Count One: Condemnation of Property Interests to Be Acquired and Property Use

24.     The interests to be acquired by NGPL are non-exclusive perpetual fifty feet (50') wide permanent pipeline rights-of-way and easements (the "Permanent Pipeline Easements") as same are identified, described and depicted on **Exhibit A** hereto, to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place one pipeline in the fifty feet (50') wide permanent easements more fully identified, described and depicted on **Exhibit A** hereto, said pipeline being not to exceed 30 inches in nominal diameter (the "Pipeline" or "Pipelines"), as set forth on **Exhibit A**, and located within such Permanent Pipeline Easements, together with such below ground valves, below ground fittings, and below ground wires, cables, and other equipment and appurtenances, and above ground cathodic protection test leads and control devices, Tru Tracker or equivalent wires, and pipeline markers, as may be necessary or convenient for construction, operation and maintenance of the Pipeline (collectively, along with the equipment, facilities and devices and roads described below, the "Facilities"), under, upon, across, and through the Parent Tracts as identified, described and depicted on **Exhibit A.**

25.     NGPL also seeks to condemn non-exclusive temporary workspaces and additional temporary workspaces identified, described and depicted on **Exhibit A** hereto (collectively, the "Temporary Workspace Easements").  Each of the foregoing Temporary

Workspace Easements shall be used by NGPL solely for the initial construction of the Project in the Permanent Pipeline Easements and Surface Site Easements and for the restoration and remediation of the land after initial construction, and shall expire upon completion of the initial construction and restoration and remediation, or upon the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Workspace Easement at issue is located, whichever occurs first. Thereafter, all of NGPL's privileges and rights on or to use of the Temporary Workspace Easements shall terminate.

26.     NGPL also seeks to condemn non-exclusive (1) permanent road access easements ("Permanent Road Access Easements"), and (2) during the initial construction of the Pipeline or Pipelines only, temporary road access easements ("Temporary Road Access Easements"), to the extent identified, described and depicted on **Exhibit A,** to be used by NGPL solely for the purpose of ingress and egress to and from public roads and other easements to which NGPL has the right of access, to and from the Permanent Pipeline Easements, and the Temporary Workspace Easements.  The Temporary Road Access Easements shall expire upon completion of the initial construction and restoration, or the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Road Access Easement as issue is located, whichever occurs first. NGPL shall not prevent the owner of the lands burdened with the Permanent Road Access Easements and, or the Temporary Road Access Easements, from utilizing the roadways within such Easements.  With respect to the Temporary Road Access Easements, NGPL will, prior to termination of same, restore the roadways located within such easements to

the same or better condition that existed immediately prior to NGPL's use thereof, to the extent reasonably practicable.  With respect to the Temporary Road Access Easements (while same are in effect) and the Permanent Road Access Easements, NGPL shall have the right to use, repair, improve and, or maintain any existing roads located therein and, or to construct, use, repair, improve, place and, or maintain thereon new roadways, including ditches, culverts, drains and such other appurtenant facilities, and, within the Permanent Road Access Easements, NGPL shall maintain and upkeep to a reasonable state of repair any roads currently situated on or constructed on the Permanent Road Access Easements. The Permanent Pipeline Easements, Temporary Workspace Easements, Permanent Road Access Easements, and Temporary Road Access Easements are collectively referred to as the "Easements".

27.    In no event is NGPL seeking to condemn any rights not authorized by FERC to be condemned by NGPL, as reflected in the Certificate.

28.    The right to use the Easements shall belong to NGPL and its agents, employees, designees, contractors, guests, invitees, successors and assigns, and all those acting by or on behalf of it for the above stated purposes.  NGPL seeks the right of ingress and egress over, across and through the Permanent Pipeline Easements, the Temporary Workspace Easements (while they remain in effect), the Temporary Road Access Easements (while they remain in effect), and the Permanent Road Access Easements, and to access same from other rights-of-way or easements and roads, to which NGPL has the right of access, for the above stated purposes and for all other purposes necessary and at

all times convenient and necessary to exercise the rights granted by the Certificate as applied and enforced by this Court.

29.     No pipeline or Facilities of a permanent nature of any kind or character shall be constructed by NGPL on the Temporary Work Space Easements or the Temporary Road Access Easements.

30.     Pursuant to the Easements sought herein, NGPL shall have the right to construct, maintain and change slopes of cuts and fills to ensure proper lateral and subjacent support and for drainage for the Facilities, and shall have the right to remove trees, brush, crops and other vegetation and obstructions from the Permanent Pipeline Easements, Permanent Road Access Easements, Temporary Workspace Easements (while they remain in effect), and Temporary Road Access Easements (while they remain in effect).

31.     Pursuant to the Easements sought herein, NGPL shall have the right to install, maintain and use gates in all fences which now cross or may cross the Permanent Pipeline Easements, or which provide access to the Parent Tracts where the Easements intersect same; and NGPL shall have the right to install its own lock, if NGPL so chooses, and NGPL and the owners of the Parent Tracts shall have access (i.e., interlocking locks) through such gates. NGPL and its designated contractors, employees and invitees shall keep all gates in fences closed at all times, except when passing through same, so that cattle, horses and, or other livestock located on the Parent Tracts cannot stray from fenced pastures. NGPL shall have no right to fence or enclose the Permanent Pipeline Easements.  NGPL shall, during the initial construction operations, maintain suitable crossings on, over, and across the Permanent Pipeline Easements and Temporary Workspace Easements. NGPL may, during

the initial construction operations, install temporary fences and gates as needed to restrict non-authorized access.

32.     If any of the lands within the Easements are subject to valid and subsisting oil and gas leases, coal leases, surface leases, pipeline easements, or easements for other purposes, NGPL's Easement rights acquired hereunder from and against the owners of such leases and, or easements, are (i) acquired only to extent necessary to carry out the rights granted to NGPL under the Easements sought, and (ii) to be exercised by NGPL so as to not unreasonably interfere with existing rights of such owners; provided, however, that NGPL shall be entitled in all events to use the Easements to carry out the purposes approved by FERC in the Certificate.

33.     NGPL has named such owners to the extent they claim some interest in the lands burdened by the Easements sought by NGPL. Defendants who own any interest in a valid and existing lease and, or an easement, may use lands lying within the Permanent Pipeline Easements and Permanent Road Access Easements for the uses authorized under the applicable lease and, or easement, provided such uses do not destroy or unreasonably interfere with NGPL's permitted uses.   As to all remaining Defendants, such Defendants (i) may use lands lying within the Permanent Pipeline Easements and Permanent Road Access Easements for all purposes which do not destroy or interfere with NGPL's permitted uses of same, including, without limitation, agricultural, open space, setback, density, street, utility and roadway purposes, (ii) after review and approval by NGPL, which will not be unreasonably withheld, may construct and install any and all streets and roadways and sidewalks, at any angle of not less than 90 degrees (90°) to NGPL's

Facilities, and of a width not to exceed forty feet (40'), across the Permanent Pipeline Easements, which do not interfere with, damage, destroy or alter the operation of the Facilities, (iii) may construct and/or install water, sewer, gas, electric, cable TV, telephone and, or other utility lines across the Permanent Pipeline Easements at any angle of not less than 90 degrees (90°) to NGPL's Facilities, across the Permanent Pipeline Easements, which do not interfere with, damage, destroy or alter the operation of the Facilities, and provided that all of NGPL's required and applicable spacings, including depth separation limits and other protective requirements, are met, and (iv) may construct and/or install water, sewer, gas, electric, cable TV, telephone or other utility lines across the Permanent Road Access Easements, so long as such construction, installation and maintenance of same does not unreasonably interfere with NGPL's use of same, or damage or destroy the roads located within such easements.

34.     The use of the lands within the Easements shall be regulated by all appropriate and then applicable ordinances, regulations, resolutions, or laws of any governmental entity having authority over same.  Defendants must notify NGPL in writing before the construction or installation of any streets, roadways, utilities or other encroachments on, over, across or under the Permanent Pipeline Easements and, or on, over, across or under the Permanent Road Access Easements.

35.     Defendants may not use any part of the Permanent Pipeline Easements and, or the Permanent Road Access Easements if such use may damage, destroy, injure, and, or interfere with the NGPL's use of same for the permitted uses hereunder. Defendants, except for those Defendants who have rights to do so under valid and subsisting leases and, or

easements, are not permitted to conduct any of the following activities on the Permanent Pipeline Easements and, or the Permanent Road Access Easements, without the prior written permission from NGPL: (i) construct any temporary or permanent building or site improvements, other than streets and roads as provided above; (ii) drill or operate any well; (iii) remove soil or change the grade or slope; (iv) impound surface water; or (v) plant trees or landscaping.  Notwithstanding anything herein to the contrary, no above or below ground obstruction that may destroy or materially interfere with NGPL's permitted uses shall be placed, erected, installed or permitted within or upon the Permanent Pipeline Easements and, or the Permanent Road Access Easements without the prior written permission of NGPL.  In the event the terms of this paragraph are violated, NGPL shall have the immediate right to correct or eliminate such violation at the sole expense of party who caused the violation.

36.    NGPL has the right from time to time on the Permanent Pipeline Easements or the Permanent Road Access Easements to trim, cut down or eliminate trees or shrubbery as may be necessary to prevent possible interference with the operation of the Facilities, and to remove possible hazards thereto, and, except as provided above, the right to remove or prevent the construction of any and all buildings, structures, reservoirs or other obstructions on the Permanent Pipeline Easements and, or the Permanent Road Access Easements that, in the sole judgment of NGPL, may endanger or interfere with the efficiency, safety, or convenient operation of the Facilities. After the completion of initial construction and restoration of the Facilities, NGPL shall pay any verifiable damages that may arise to growing crops, timber, fences and other improvements from the construction,

maintenance and operation of the Facilities, provided that NGPL shall not be responsible for paying damages for its removal of any trees or brush (but not growing crops) or other obstructions from the Permanent Pipeline Easements or the Permanent Road Access Easements as part of its routine operations to maintain the Easements free from obstructions.

37.     NGPL shall maintain the Permanent Pipeline Easements, the Permanent Road Access Easements, the Temporary Workspace Easements (while same remain in effect) and the Temporary Road Access Easements (while same remain in effect) clear of all litter and trash accumulations.

38.     NGPL does not seek to acquire any royalty, working, revenue, overriding, or other oil, gas, or mineral interests.  Defendants shall, to the extent owned by Defendants, retain all the oil, gas, and other minerals in, on and under the Parent Tracts, including within the Easements; provided, however, Defendants shall not be permitted to drill or operate equipment for the production or development of oil, gas, and minerals within or on the Permanent Pipeline Easements or the Permanent Road Access Easements, but Defendants shall be permitted to extract the oil, gas and minerals from and under same by directional drilling and other means, so long as such activities do not damage, destroy, injure, and/or interfere with the NGPL's use, operation and maintenance of the Facilities or NGPL's use of said Easements for the purposes for which same are sought by NGPL.

39.     Upon completion of construction, permanent fencing  destroyed or disturbed by project construction activities shall be repaired and, or re-installed by NGPL, at its sole

expense, along substantially the same alignment, configuration and approximate location of the Defendants' existing fencing system.

40.     During the original construction of the Facilities, NGPL shall segregate the topsoil from the ditchline up to a maximum of twelve inches (12") so that the topsoil will be separated from the sub soils. In backfilling after installation of the Facilities, the topsoil first removed shall, as reasonable as practical, be used as cover soil in such a manner so as to result in it being returned to the top of the Permanent Pipeline Easements and Temporary Workspace Easements as topsoil.

41.     The surface of the Permanent Pipeline Easements and Temporary Workspace Easements will be filled, leveled, and graded after the original construction of the Facilities is completed, so as to restore the surface as nearly as practicable to its original level, grade, drainage, and condition.

42.     NGPL shall comply in all respects, at its sole cost, with all applicable federal, state, and local laws, rules, and regulations which are applicable to NGPL's activities hereunder, including, without limitation, the construction, use, operation, maintenance, repair and service of the Facilities.

43.     NGPL shall have the right to adequately mark the Pipeline with permanent line markers and ground placards, and to install and maintain cathodic test leads in order to promote public safety and the future safe operation of said pipeline, and to meet applicable governmental regulations.

44.     Notwithstanding anything to the contrary herein, NGPL (except for pipeline markers, and cathodic test leads on Permanent Pipeline Easements, which will be placed

within the Permanent Pipeline Easements at road crossings, property boundaries or existing fence lines intersected by the Pipeline or Pipelines, unless required by applicable regulations to be placed at other locations within the Permanent Pipeline Easements, and pipeline vents, which will be placed within the Permanent Pipeline Easements at road crossings, where required) will not construct, build, install, maintain or have any above ground structures, installations, equipment, or apparatus of any kind on or within the boundaries of the Easements.

45.     NGPL hereby agrees to indemnify and hold Defendants harmless from and against any claim or liability or loss from personal injury, property damage resulting from or arising out of the use by NGPL, its contractors, servants, agents or invitees, of the Easements, excepting, however, any and all claims, liabilities or damages as may be due to or caused by the acts of a Defendant, or his, her or its servants, agents or invitees.

46.     NGPL shall have the right to assign its Easements to the extent allowed by applicable law, and the rights granted hereunder, while in effect, may be assigned in whole or in part, to one or more assignees. The Permanent Pipeline Easements, and the Permanent Road Access Easements sought hereunder shall be in perpetuity, and the easement provisions of this Verified Complaint, including all benefits and burdens, shall be covenants running with the land and shall be binding on NGPL, Defendants, and their respective successors and assigns.

47.     It is in the public interest and necessity, as evidenced by the Certificate, that the Easements, as certified by FERC and described herein and in **Exhibit A,** be condemned for the public purposes herein described.

48. The intended uses of the Easements to be taken are within the authority conferred by the Certificate.

49. Pursuant to Fed. R. Civ. P. 65(c), NGPL will deposit into the Court's registry the amount required by the Court to secure Defendants compensation that will ultimately be awarded for the Easements sought, and subject to the withdrawal by Defendants on terms specified by this Court.

## Count Two: Declaratory Relief

50. NGPL incorporates by reference paragraphs 1 through 49.

51. NGPL requests the Court to declare, pursuant to 28 U.S.C. § 2201, and the Certificate issued by FERC, pursuant to the Natural Gas Act, that NGPL has the substantive right to exercise eminent domain over and condemn the Easements as outlined in this Verified Complaint and in the Certificate.

## Count Three: Injunctive Relief

52. NGPL incorporates by reference paragraphs 1 through 51.

53. NGPL seeks an order granting it immediate entry upon the Easements identified herein.

54. Immediate access and entry is necessary so that NGPL can timely place the NGPL Project in service and operate and maintain the NGPL Project, pending determination of just compensation, to meet the needs of NGPL's shippers and their customers, while at the same time complying with the applicable regulations and NGPL's obligations set forth in the Certificate. If NGPL does not obtain immediate access and entry

to the Easements, it will be unable to timely place the NGPL Project in service to meet the in service dates required by its shippers, and to meet the needs of the public, and will suffer immediate and irreparable harm for which it has no adequate remedy.

55.     NGPL will, upon Court order, post an appropriate bond reflective of the total estimate of just compensation due to Defendants for the acquisition of the Easements.  As a result, Defendants will not be harmed in any way.

56.     NGPL has the right to condemn the Easements pursuant to the Certificate issued pursuant to the Natural Gas Act and, therefore, NGPL is substantially likely to prevail on the merits of the taking.

57.     The Certificate establishes that the NGPL Project and acquisition of the Easements is in the public interest.

58.     Accordingly, NGPL requests the Court to enter an order granting injunctive relief to permit NGPL the right of immediate entry and access upon the Easements to commence and complete construction of the NGPL Project.

### Civil Rule 71.1(d) Notices

59.     Pursuant to Fed. R. Civ. P. 71.1(d)(1), NGPL is hereby delivering to the clerk the requisite notices to the Defendants named herein, as identified in **Exhibit A**.

WHEREFORE, NGPL respectfully prays that this Honorable Court:

a.      Deem the Notice submitted herewith pursuant to Federal Rule of Civil Procedure 71.1(d) to be good and sufficient;

b.      Order that said Notice be served on the Defendants in a manner set forth by

Federal Rule of Civil Procedure 71.1(d)(3);

c.    Recognize and declare NGPL's right to appropriate, through eminent domain, the Easements;

d.    Enter an order granting NGPL immediate entry onto the Easements identified and described herein, prior to the determination of just compensation, upon the posting of security required by the Court to begin pre-construction activities, construction of the Facilities, and operation and maintenance thereof, while the issue of just compensation for the taking is resolved in this Court;

e.    Appoint a commission for the determination of just compensation on the takings pursuant to Fed. R. Civ. P. 71.1(h)(2);

f.    Enter judgment and order(s) of taking in favor of NGPL, condemning the Easements identified and described herein; and

g.    Issue all necessary and/or appropriate orders and decrees, and for all other general, equitable and legal relief as the Court deems just and proper.

Respectfully submitted this 13th day of January, 2020.

**ZABEL FREEMAN**

By  /s/ James A. Freeman
        James A. Freeman
        State Bar No. 00796580
        jfreeman@zflawfirm.com
        1135 Heights Blvd.
        Houston, Texas 77008
        (713) 802-9117
        (713) 802-9114 (Fax)

**ATTORNEYS FOR PLAINTIFF,
NATURAL GAS PIPELINE
COMPANY OF AMERICA LLC**

OF COUNSEL:

Thomas A. Zabel
State Bar No. 22235500
tzabel@zflawfirm.com
A. Antroy Arreola
State Bar No. 24006769
aarreola@zflawfirm.com
Vadim Bourenin
State Bar No. 24076284
vbourenin@zflawfirm.com
Thomas W. White, Jr.
State Bar No. 24102645
twhite@zflawfirm.com
ZABEL FREEMAN
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9117
(713) 802-9114 (Fax)

# VERIFICATION

STATE OF TEXAS      § <br>
                                §    SS <br>
COUNTY OF HARRIS    §

I, Daniel G. Gredvig, after being duly sworn, depose and state:

1. I am the Director of Land and Right of Way for the Natural Gas Pipeline Company of America LLC ("NGPL") on the NGPL Project.

2. I am the person responsible for supervising NGPL's efforts to acquire the Easements and other interests needed for the NGPL Project and overseeing overall construction of the NGPL Project.

3. I am authorized and qualified to make this verification on behalf of NGPL based on my personal knowledge of the factual matters set forth in the above Verified Complaint.

4. I have read the foregoing Verified Complaint and am familiar with its contents.

5. The statements of fact contained in the Verified Complaint are within my personal knowledge and are true and accurate.

By: _____
Daniel G. Gredvig

Sworn to and subscribed before me this _10th_ day of _JANUARY_, 2020.

_Geary Alexander_
Notary Public in and for the State of Texas



GEARY ALEXANDER
Notary Public, State of Texas
Comm. Expires 02-08-2022
Notary ID 8630742